Thelma Dickson, Petitioner v. Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued November 14, 1985, before Judges Mac-Phail and Doyle, and Senior Judge Barbieri, sitting as a panel of three.

*Richard A. Katz,* for petitioner.

*John Kane,* Counsel, with him, *Carol A. Genduso* and *Jason W. Manne,* Assistant Counsels, for respondent.

Opinion by Judge MacPhail, January 7, 1986:

Thelma Dickson (Petitioner) petitions for review of an order of the Department of Public Welfare (DPW) which affirmed the decision of the County Assistance Office (CAO) denying Petitioner food stamps for the period between March 28, 1984 and May 1, 1984. We reverse.

Petitioner submitted an application for benefits on February 16, 1984, at which time the CAO held a pre-screen interview. Follow-up interviews were held on March 6, 1984 and March 20, 1984. The CAO denied Petitioner's application because of her inability to verify her identification, her most recent utility bills

and receipts, and whether a son lived at Petitioner's home.

Another appointment was scheduled on March 28, 1984. The CAO treated this appointment as a pre-screen interview and informed Petitioner that a follow-up interview would be scheduled, at which time Petitioner could verify her claim. Petitioner refused to make yet another appointment. The CAO denied Petitioner's application on the basis that Petitioner voluntarily withdrew her application because she did not want to keep a follow-up appointment.[1]

Petitioner timely appealed this decision, contending that the CAO should not have required Petitioner to attend another follow-up interview because she had already been to the CAO four times within a month and a half. At the hearing, Petitioner testified that she had all of the required verification on March 28, 1984. Petitioner's appeal was denied by the hearing officer, whose decision was affirmed by the Office of Hearings and Appeals on July 13, 1984. After Petitioner's request for reconsideration was denied, an appeal to this Court was taken.

Petitioner argues here that benefits should have been granted retroactive to March 28, 1984, contending that she had all the proper verification with her at that time. In response, DPW maintains that it is CAO procedure to conduct two interviews, a pre-screen interview and a follow-up interview. DPW avers that the purpose of the pre-screen interview is to "save time" —i.e., correct application errors and inform applicants what verification would be required at the follow-up "eligibility" interview. DPW argues that since Petitioner had to file a new application on March 28, 1984, "it only makes sense" that Petitioner be required to

---

[1] Petitioner reapplied and was granted benefits effective May 1, 1984.

attend both a pre-screen and a follow-up interview. We disagree.

Section 505.4(a)(2) of the Public Assistance Manual (Manual), 55 Pa. Code §505.4(a)(2) requires the CAO to assist the applicant in complying with requests for information and verification. The duties of the CAO in interviewing applicants includes not only reviewing the application, but exploring and resolving unclear and incomplete information. Section 505.4(b)(1) of the Manual. If the applicant fails to complete the application process, even after the CAO has provided assistance, the delay will be considered the fault of the applicant. Section 505.4(e)(1) of the Manual. If thirty days after the original date of the application the CAO cannot proceed further due to the fault of the applicant, the CAO shall issue a denial notice. Section 505.4(e)(2) of the Manual. However, the Manual provides that if the applicant takes the required action within sixty days of the original date of the application, the CAO shall reopen the case *without* requiring a new application. Section 505.4(e)(2)(i) of the Manual.

In this case, Petitioner's initial application was filed on February 16, 1984. When the CAO determined that Petitioner's verification was incomplete as of March 20, 1984, the application was properly denied. However, when Petitioner returned on March 28, 1984, the CAO was required to determine whether Petitioner had provided the missing information. Section 505.4(e)(2)(i) of the Manual. If Petitioner provides the missing information within 60 days of the original date of the application, the CAO must reopen the case without requiring a new application. Instead of determining whether Petitioner had in fact provided the missing verification, the CAO proceeded as if Petitioner had filed a new application on March 28, 1984, in violation of Section 505.4(e)(2)(i)'s mandate.

DPW concedes that it did not determine whether Petitioner had taken the required action on March 28, 1984. DPW maintains, however, that the CAO has the right to require applicants to attend necessary interviews and that Petitioner refused to attend such a necessary interview. DPW argues that Petitioner "could have made a mistake on the new application or her circumstances could have changed so as to require different or additional verification," Respondent's Brief at p. 6, and that therefore a follow-up interview was necessary. However, the CAO made no determination that there was a mistake or that circumstances had changed. We do not understand how a follow-up interview can be deemed to be necessary without making the initial determination.

The purpose of a follow-up interview, as we understand it, is to give the applicant an opportunity to provide verification. If the applicant has the required verification on hand at the time of his initial appointment, then a follow-up interview is obviously not necessary. To automatically require a follow-up interview as a matter of policy frustrates the implementation of the food stamp program. *See Ream v. Department of Public Welfare*, 93 Pa. Commonwealth Ct. 190, A.2d (1985). Instead of assisting the Petitioner in complying with requests for information and verification to expedite the application process as the CAO was required to do by Section 505.4(a)(2) of the Manual, the CAO here simply followed an office policy which had no relevancy whatever to the factual circumstances. The hearing examiner did not find incredible Petitioner's uncontradicted testimony that she had all of the verification papers with her; she simply concluded that since the CAO's office policy was not prohibited by DPW regulations, there was nothing wrong with the caseworker's request. We respectfully disagree. The Manual requires more than

blind adherence to office policy; it requires the *assistance* to applicants unfamiliar with the maze of bureaucratic rules and regulations. While we have in the past and will continue in the future to uphold the right of DPW to make reasonable efforts in accord with the purposes of the food stamp program to ascertain and verify eligibility for participants and while we believe Petitioner here should have explained why she thought another interview was unnecessary, we believe the initial fault lay with the CAO.

We conclude that DPW erred as a matter of law when it determined that Petitioner voluntarily withdrew her application. As we have noted, Petitioner was not required to submit a new application on March 28, 1984, and therefore, DPW could not require Petitioner to attend another follow-up interview without first determining whether that interview was necessary. We will reverse DPW's adjudication and hold that Petitioner is eligible for food stamps. As Petitioner's eligibility was established during the second 30-day period, the CAO shall provide benefits effective March 16, 1984. Section 505.4(e)(2)(ii). *Compare Tempesta v. Department of Public Welfare,* 84 Pa. Commonwealth Ct. 605, 480 A.2d 371 (1984).

### ORDER

The order of the Department of Public Welfare at Case No. 35774, dated September 5, 1984, is reversed.